UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANGEL MARTINEZ, | : | Case No. 1:14-cr-58-3 |
| | : | (1:16-cv-750) |
| Petitioner, | : | |
| | : | |
| v. | : | Judge Michael R. Barrett |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

**OPINION & ORDER**

This matter is before the Court upon Petitioner Angel Martinez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 101). The Government filed a Response in Opposition. (Doc. 109). Petitioner filed a Reply. (Doc. 113). Thereafter, Petitioner filed a Motion pursuant the Rule 15(d), Fed. Civil P. to the Supplement Mr. Martinez Reply to the Government Response (Doc. 116); a Supplemental Brief (Doc. 118); and Motion to Expedite (Doc. 123). Also pending before the Court is Petitioner's Motion to Appoint Counsel. (Doc. 117).

For good cause shown, Petitioner's Motion pursuant the Rule 15(d), Fed. Civil P. to the Supplement Mr. Martinez Reply to the Government Response (Doc. 116) is GRANTED. The Court will consider Petitioner's Supplement in its decision on whether to grant Petitioner's Petition.

**I.    PRIOR PROCEEDINGS**

Petitioner was indicted along with two co-defendants on two violations: conspiracy to possess with the intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(i)

and (ii), and 21 U.S.C.§ 846 (Count One); and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, and 18 U.S.C. § 2 (Count Four). (Doc. 14). Defendant pled guilty to Count One of the Indictment. (Doc. 49). The maximum penalty for the violation of 21 U.S.C. § 846, 21 U.S.C. §841(a)(1) and 21 U.S.C. §841(b)(1)(A)(i) and (ii) is up to life imprisonment, a $10,000,000 fine, at least five years of supervised release, a mandatory $100 special assessment, and restitution. The mandatory minimum term of imprisonment is ten years. The Court sentenced Petitioner to 120 months in prison, waived the fine, imposed the special assessment, and imposed a term of Supervised Release of five years. (Doc. 82). The United States dismissed without prejudice Count Four of the Indictment. (Id).

Petitioner filed an appeal (Doc. 69), but the Sixth Circuit affirmed the sentence imposed by the Court. (Doc. 95). Specifically, the Sixth Circuit found that the Court did not err in finding that Petitioner was not entitled to a safety-valve reduction under U.S.S.G. § 5C1.2.

Petitioner sets forth two grounds for relief in his petition under 28 U.S.C. § 2255. First, Petitioner argues that his trial counsel was ineffective because counsel failed to advise him to accept the Government's first plea offer, never explained the terms and conditions of his first plea offer, and never told him about the potential consequences that he would face if he did not accept the first plea offer. Petitioner explains that as a result, he wound up accepting the Government's second plea offer which required him to plead guilty to conspiring a greater amount of heroin and an additional five kilograms of cocaine. Petitioner explains that under the second plea offer, the Court was required to impose a minimum sentence of ten years, but under the first plea offer, it was likely that Petitioner

2

would have only been sentenced to a five-year sentence based on the guideline range. Petitioner states that counsel failed to adequately investigate his case before advising him to reject the first plea offer because counsel did not obtain his case file from a previous attorney, or review Petitioner's grand jury testimony wherein Petitioner admitted distributing six ounces of heroin to one of his co-defendants. Petitioner explains that if his counsel had done an adequate investigation, he would have found out that Petitioner's grand jury testimony could have been used against him if he chose to go to trial.

Second, Petitioner argues that his trial counsel was ineffective in advising him that if he accepted the Government's second plea offer, he would not be held responsible for the entire drug amounts listed in the second plea offer. Petitioner explains that his trial attorney told him that if he accepted the Government's second plea offer, he would ask the Government to recommend the safety valve reduction, and if his request was denied, Petitioner could withdraw his guilty plea. However, Petitioner explains, the Government opposed his request for a safety valve reduction and the Court rejected his request. Petitioner explains that the Government's evidence would have supported a conviction for conspiracy to distribute six ounces of heroin, but would not have supported a conviction of conspiracy to distribute one kilogram or more of heroin and five kilograms or more of cocaine. Petitioner explains further that even if he had been found guilty of both Counts One and Four at trial, his sentencing guideline range would have been 120 to 121 months—which is about the same amount of time the second plea offer allowed the Court to impose. Petitioner states that if counsel had not given him bad advice, he would have rejected the second plea offer and gone to trial.

## II. STANDARD OF REVIEW

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citing *Weinberger v. U.S.*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967).

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir.1999)). However, no hearing is required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*.

## III. ANALYSIS

### A. Motion to Appoint Counsel

Petitioner has moved for this Court to appoint counsel to present his legal position. Petitioner explains that he lacks knowledge of the law and his language barrier is blocking him from laying out a proper argument.

There is no constitutional right to counsel in proceedings under § 2255. *See Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). A petitioner who brings a habeas petition under § 2255 has a right to appointed counsel only when "the interest of justice so requires." 18 U.S.C. § 3006A(a)(2)(B). As one district court has explained:

> Federal courts generally have endorsed the appointment of counsel to represent legally unsophisticated prisoners who are financially unable to obtain counsel in: (1) capital cases; (2) cases that turn on substantial and complex procedural, legal or mixed legal and factual questions; (3) cases

involving uneducated or mentally or physically impaired petitioners; (4) cases likely to require the assistance of experts either in framing or in trying the claims; and (5) factually complex cases. James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure, § 12.3b (3d ed.1998). A district court does not abuse its discretion, by declining to appoint counsel where the issues in the case are "straightforward and capable of resolution on the record" or the petitioner has a "good understanding of the issues and the ability to present forcefully and coherently his contentions." *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Swazo v. Shillinger*, 23 F.3d 332, 333 (10th Cir. 1994); *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991).

*Camcho v. United States*, 4:10 CV 01650, 2010 WL 4365479, *1 (N.D. Ohio Oct. 28, 2010).

None of these circumstances exist in this case. This is not a capital case. Petitioner's habeas claims do not involve complex procedural, legal or mixed legal and factual questions, nor was his underlying criminal case complex. Petitioner has already identified the grounds upon which his ineffective assistance of trial counsel claim is based. There is nothing in the record which would indicated that Petitioner's level of education, or mental or physical status requires the appointment of counsel. Finally, Petitioner's claims are not likely to require the assistance of experts. Therefore, Petitioner's Motion to Appoint Counsel is DENIED.

### B. Ineffective assistance of counsel

Both of Petitioner's grounds for relief are based on a claim of ineffective assistance of counsel.

A petitioner claiming ineffective assistance of counsel must show that his attorney's performance was so inadequate as to violate his Sixth Amendment rights. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland*'s two-part test governs claims of ineffective assistance of counsel. Under the first or "performance" prong, the

petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within a wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* at 689. Under the second or "prejudice" prong, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145, 132 S. Ct. 1399, 1408, 182 L. Ed. 2d 379 (2012). To demonstrate prejudice based on ineffectiveness of counsel in plea negotiations, a petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 163-64. "Moreover, if counsel failed to provide the defendant with an estimated range of the penalties that could result from a trial conviction, the prejudice prong is presumptively satisfied if the difference

between the length of the sentence proposed in the Government's plea offer and the sentence imposed after a trial conviction is substantial." *Sawaf v. United States*, 570 F. App'x 544, 547 (6th Cir. 2014); *see also Griffin v. United States*, 330 F.3d 733, 737–39 (6th Cir. 2003) (holding that the petitioner was entitled to an evidentiary hearing to demonstrate prejudice where he was not notified of a plea offer and there was a substantial disparity between the penalty offered by the government and the penalty called for by the indictment).

The affidavit of Petitioner's counsel, Attorney Dennis Adams, is filed in the record and explains the history of plea negotiations in Petitioner's case. (Doc.107, Dennis Adams Aff.). Adams states that when he first met with Petitioner in September of 2014, Petitioner informed him that his previous counsel had worked out a plea offer that would require him to do a five-year mandatory minimum sentence. (Doc. 107, Adams Aff. ¶ 4, PAGEID # 516). Petitioner told Adams that the plea was conditioned on his cooperation with the Government, but that he was afraid to cooperate with the Government because he believed that if he cooperated, there would be a direct threat to his family. (Doc. 107, Adams Aff. ¶¶ 5, 7, PAGEID # 516, 517). Adams states that Petitioner told him that he had testified before the grand jury, but in those proceedings, he denied that he ever gave heroin to his co-defendant, Vincente Polanco. (Doc. 107, Adams Aff. ¶ 8, PAGEID # 517). Petitioner also told Adams that he did not make any statements to the investigators assigned to the case. (Doc. 107, Adams Aff. ¶ 9, PAGEID # 517).

Adams explains that later in November of 2014, he was provided with a transcript of the grand jury proceedings and found out that Petitioner had actually testified before the grand jury that he delivered six ounces of heroin to Vincente Polanco on the date of

7

their arrest. (Doc. 107, Adams Aff. ¶ 19, PAGEID # 518). Adams also learned from the AUSA assigned to the case that Petitioner had given statements to Drug Enforcement Administration ("DEA") agents when he was represented by the prior counsel. (Doc. 107, Adams Aff. ¶ 20, PAGEID # 518). Adams explained that after learning this information, he had a conversation with Petitioner and told him that it was going to be very difficult to prevail at trial given his grand jury testimony and his prior statements to the DEA agents. (Doc. 107, Adams Aff. ¶ 21, PAGEID # 518). In early December of 2014, Adams arranged a meeting between the AUSA assigned to the case, himself, and Petitioner in an effort to salvage the five-year plea offer. (Doc. 107, Adams Aff. ¶ 28, PAGEID # 518). During the meeting, Adams learned that the DEA agents were upset that Petitioner had not provided them with information that they knew he possessed and had not been in contact with them at all since their earlier meetings that took place prior to Adams' representation. (Doc. 107, Adams Aff. ¶ 30, PAGEID # 518). Adams explains that a few days after the meeting, the AUSA emailed him and told him that he was formally withdrawing the five-year plea offer and changing it to an offer of ten years due to Petitioner's lack of cooperation. (Doc. 107, Adams Aff. ¶ 31, PAGEID # 519).

Adams explains that it was the lack of cooperation on the part of Petitioner which led the Government to withdraw the five-year offer. (Doc. 107, Adams Aff. ¶¶ 30-31, PAGEID# 518-19). Adams states: "At no time did I reject the Government's five year plea offer. That plea offer was a contingent upon Mr. Martinez's cooperation, and the government withdrew that plea offer because they did not feel he cooperated with them." (Doc. 107, Adams Aff. ¶ 32, PAGEID# 519). Adams explains that he recommended to Petitioner that he should seriously consider the ten-year plea offer by the government

8

given the fact that he had already made statements to the DEA Agents where he specifically discussed possession of heroin in excessive of a kilogram and admitted to supplying Polanco with heroin on multiple occasions that he knew was going to be sold by Polanco. (Doc. 107, Adams Aff. ¶ 33, PAGEID# 519). Adams advised Petitioner that he thought he was eligible to receive the safety valve reduction under U.S.S.G. § 5C1.2 because of his initial cooperation with the Government. (Doc. 107, Adams Aff. ¶ 35, PAGEID# 519). Adams states that he did not tell Petitioner that if he did not receive the safety-valve reduction, he could withdraw his plea. (Doc. 107, Adams Aff. ¶ 36, PAGEID# 519).

Adams' statements in his affidavit are corroborated by other evidence in the record. At Petitioner's sentencing hearing, the Government took the position that Petitioner was not entitled to a safety-valve reduction under § 5C1.2 because he had not truthfully provided the Government all the information he has concerning the offense or offenses that were part of the same course of conduct or common scheme or plan. (Doc. 82, PAGEID# 254). DEA Special Agent Jeremy Nissen testified at the hearing. (Doc. 82, PAGEID# 255). Nissen stated that over the course of the investigation, he met with Petitioner two or three times. (Doc. 82, PAGEID# 255). Nissen explained that he did not believe Petitioner was truthful or honest about all the sources of his heroin or the quantities of heroin he had distributed. (Doc. 82, PAGEID# 256-57). Nissen testified that the investigation of the narcotics trafficking organization which Petitioner was involved in was still ongoing. (Doc. 82, PAGEID# 257). Nissen explained that as part of the investigation, the DEA agents spoke with several confidential sources who stated that Petitioner had negotiated possible transactions with them. (Doc. 82, PAGEID# 257).

9

Nissen explained that Petitioner had not told him about those dealings. (Doc. 82, PAGEID# 258).

Petitioner also testified at the hearing and explained that he had not been involved in any drug transactions after he was arrested, but someone did approach him about a transaction. (Doc. 82, PAGEID# 270). Petitioner explained that he called the DEA agent to tell him about this. (Doc. 82, PAGEID# 270). On rebuttal, Nissen acknowledged that Petitioner called him on two occasions. Nissen described the first occasion, which was in late January of 2015:

> . . . Mr. Martinez called me and asked if he could come in and talk to us, that he had information to provide us to help himself in this investigation. We allowed Mr. Martinez to come into our office. I had approximately six or eight agents and task force officers in a conference room prepared to take down the information that Mr. Martinez had for us.
>
> The entire conversation was Mr. Martinez explaining to the agents that he was a good person and that we needed to cut him a break. There was nothing of value; no information provided other than that.
>
> Q. So he didn't tell you about anybody trying to negotiate a narcotics deal with him or with anybody else?
>
> A. No.

(Doc. 82, PAGEID# 274). On the second occasion, Petitioner called Nissen in March of 2015 and left a voicemail stating that he had seen a certain individual. (Doc. 82, PAGEID# 275-76). However, this person was not someone that the DEA agents had been looking for. (Doc. 82, PAGEID# 276).

Based on the evidence in the record, Petitioner was not prevented from signing the five-year plea offer as the result of any advice he received or did not receive from counsel. Instead, it was his lack of cooperation with DEA Agents which caused the Government to withdraw the five-year deal. Therefore, the Court concludes that under

the first or "performance" prong, Petitioner has not shown that his counsel's representation fell below an objective standard of reasonableness in failing to advise him to accept the Government's first plea offer. The evidence in the record shows that there was no five-year offer left on the table for Petitioner to accept.

The Court also concludes that Petitioner has not shown ineffective assistance of counsel based on Petitioner's claim that counsel failed to advise him that if he accepted the Government's second plea offer, he would not be held responsible for the entire drug amounts listed in the second plea offer. During Petitioner's change of plea hearing, Petitioner admitted several times that he conspired to distribute and possess with intent to distribute one kilogram or more of a mixture of substance containing a detectable amount of heroin and five kilograms or more of a mixture or substance containing a detectable amount of cocaine. (Doc. 83, PAGEID# 319, 321, 322). Petitioner also stated that aside from the plea agreement, none of the attorneys in his case promised or even suggested that he will receive a lighter sentence or any other form of leniency if he plead guilty. (Doc. 83, PAGEID# 318). Even if counsel had told Petitioner that he would not be held responsible for the entire drug amounts, the Court's discussion with Petitioner at his change of plea hearing made it clear that Petitioner could be held responsible for the entire drug amounts listed in the second plea offer. The Sixth Circuit has explained that "[o]ur cases demonstrate that, even if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record' by the district judge during a plea colloquy." *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299-300 (6th Cir. 2016) (quoting *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993)). This is because a district court's proper plea colloquy "cure[s] any

misunderstanding [a defendant] may have had about the consequences of his plea." *Id.* (quoting *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir.1999)).

Finally, the Court concludes that Petitioner has not shown ineffective assistance of counsel based on Petitioner's claims that counsel informed him that if his request for the safety value reduction was denied, Petitioner could withdraw his guilty plea. The plea agreement signed by Petitioner specifically states:

> The defendant understands that he does not have the right to withdraw his guilty plea if the Court chooses to apply the Sentencing Guidelines including upward departures or otherwise imposes a sentence that is higher than expected. The defendant understands that the matter of sentence is reserved solely to the District Court and that the Court could impose the maximum penalty. No promises or representations have been made to the defendant as to what sentence the Court will impose.

(Doc. 49, PAGEID# 163-64). Therefore, the plea agreement itself makes it clear that Petitioner could not withdraw his guilty plea.

## IV.    CONCLUSION

Pursuant to Title 28 U.S.C. § 2255, the Court finds that the motions, files, and records of this case conclusively show that Petitioner is not entitled to relief. Therefore, a hearing is not necessary to determine the issues and make the findings of fact and conclusions of law with respect thereto. *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003). The claims raised are conclusively contradicted by the record and the well-settled law of the Sixth Circuit and the United States Supreme Court.

Accordingly, Petitioner Angel Martinez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 101) is **DENIED**; Petitioner's Motion pursuant the Rule 15(d), Fed. Civil P. to the Supplement Mr. Martinez Reply to the Government Response (Doc. 116) is **GRANTED;** and Petitioner's Motion to

Expedite (Doc. 123) is **DENIED as MOOT**. Finally, Petitioner's Motion to Appoint Counsel (Doc. 117) is **DENIED**.

Further, the Court will not issue a certificate of appealability. The Court concludes that none of the claims raised by Petitioner in his motion, which have been decided on the merits, are debatable among reasonable jurists, could be resolved differently on appeal or are adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). In addition, Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c); *see also* Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court